## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROOSEVELT ROAD RE, LTD. and
TRADESMAN PROGRAM MANAGERS, LLC,

                    Plaintiffs,          **Case No. _____**

v.

HERBERT S. SUBIN, ERIC D. SUBIN, and
JORGE ARTURO GONZALEZ LUPI,

                    Defendants.

---

## COMPLAINT

---

Plaintiffs **ROOSEVELT ROAD RE, LTD.** (hereinafter referred to as "**Roosevelt**") and TRADESMAN PROGRAM MANAGERS, LLC (hereinafter referred to as "**Tradesman**") (collectively referred to hereinafter as "Plaintiffs") by and through their attorneys THE WILLIS LAW GROUP, LLC, allege as follows:

## I.  JURISDICTION AND VENUE

1.  This is a civil action arising out of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964, and 28 U.S.C. § 1331 in that certain of the claims arise under the laws of the United States and over other claims herein under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.  Venue is proper in this District under and pursuant to 18 U.S.C. § 1965, and pursuant to 28 U.S.C. § 1391, in that numerous of the acts, practices, and events giving rise to the

claims alleged in this Complaint occurred in this District, and at least one of the Defendants reside in this District.

## II.  <u>THE PARTIES</u>

3.     Plaintiff Roosevelt Road Re, Ltd. is a foreign limited company duly organized and existing under the laws of Bermuda. At all times relevant herein, Roosevelt was authorized to conduct business in New York.

4.     Plaintiff Tradesman Program Managers, LLC is a limited liability company duly organized and existing under the laws of the State of New York. At all times relevant herein, Tradesman maintained its principal place of business in the State of New York and is authorized to conduct business in New York.

5.     Upon information and belief, Defendant HERBERT D. SUBIN ("H. Subin") is a citizen of the State of New York and the principal, lead trial attorney at the law firm of Subin Associates, LLP ("Subin Firm"), with an office at 150 Broadway, New York, NY 10038. At all times relevant herein, H. Subin was licensed or otherwise authorized to practice law in the State of New York.

6.     Upon information and belief, Defendant ERIC D. SUBIN ("E. Subin") is a citizen of the State of North Carolina and a senior trial attorney at the Subin Firm.  At all times relevant herein, E. Subin was licensed or otherwise authorized to practice law in the State of New York.

7.     Upon information and belief, defendant JORGE LUPI a/k/a Alejandro Gonzolez-Lupi, a/k/a Alejandro Gonzalez, a/k/a Jorge Gonzolez-Lupi, a/k/a Jorge Gonzalez ("Lupi" and together with E. Subin and H. Subin, "Defendants") is a citizen of the State of New York.  At all relevant times herein, Lupi acted as an agent on behalf of the Subin Firm.

### III.     FACTUAL BACKGROUND

#### A.     Fraud Scheme

8.      From at least 2018 to the present, and continuing into the future, Defendants, together with others known and unknown, for their financial benefit, orchestrated a widespread fraud scheme to defraud Plaintiffs and others by preparing and collecting documentation as well as orchestrating the submission, filing and prosecuting of hundreds of fraudulent workers' compensation claims and filing lawsuits on behalf of construction workers arising out of work-place purported construction accidents that occurred in New York and purportedly required significant medical services (the "Fraud Scheme").

9.      Generally, as part of the Fraud Scheme, individuals known as "runners" ("Runners"), under the direction of Defendants and on behalf of the Subin Firm, recruited construction workers ("Claimants") into staging and/or perpetuating fake construction accidents at various construction sites throughout New York.

10.     Regardless of any actual bodily injury stemming from the purported construction accidents, these Claimants were instructed by the Runners, under the direction of Defendants and on behalf of the Subin Firm, to fake and to claim certain bodily injuries that purportedly resulted from such accidents and to seek medical treatment.

11.     The Runners then referred and/or transported these Claimants to the Subin Firm where attorneys and/or other employees of the Subin Firm, at the direction of Defendants, met with these Claimants.

12.     The Subin Firm, at the direction of Defendants, represented the Claimants in connection with general liability lawsuits filed against the various parties involved with the

construction project (*e.g.*, owner, general contractor, construction manager, etc.) for purported injuries that resulted from accidents on the construction project.

13.     For workers' compensation claims, the Subin Firm, at the direction of Defendants, referred the Claimants to certain other complicit law firms ("Other Law Firms"), with which Defendants had an agreement and understanding as to the Fraud Scheme and from which the Subin Firm would receive financial remuneration that was based on the amount of settlement, and the Other Law Firms represented the Claimants in connection with claims made to the New York State Workers' Compensation Board.

14.     For most Claimants, both general liability lawsuits and workers' compensation claims were initiated and proceeded in parallel to maximize profit for the Subin Firm, and ultimately for Defendants.

15.     In order to inflate settlement value and workers' compensation benefits, and thereby effectuate higher profit, the Runners and/or attorneys and/or other employees of the Subin Firm, at the direction of Defendants, directed the Claimants to seek medical treatment from associated medical providers ("Medical Providers") who provide a variety of services (radiology, physical therapy, pain management and orthopedic surgery) at facilities located in or to patients from multiple states, including New York and New Jersey.

16.     These Medical Providers also had an agreement and understanding as to their involvement in the Fraud Scheme, including providing fraudulent medical documentation needed for higher settlement values in exchange for Defendants continuing to funnel patients to their offices and additional monies obtained via predatory litigation funding.

17.     Defendant Lupi was one such "runner" who, along with persons acting under his direct and ongoing control, recruited Claimants and directed Claimants to the Subin Firm and to the Medical Providers, all on behalf of the Subin Firm and at the direction of Defendants.

18.     Many of the Claimants are undocumented immigrants who do not speak English and were assisted by Defendants in obtaining false work authorization credentials, and the Claimants, as part of the Fraud Scheme, were instructed to fake or misrepresent their accidents and injuries and to receive a myriad of healthcare services that were unnecessary, excessive, unwarranted and costly.

19.     As an incentive to attest to fraudulent accidents and injuries and to undergo unnecessary surgery, Claimants were offered payment as well as a percentage of any settlement proximate to retaining Defendants following alleged accidents and injuries, and, additionally, via litigation funding sources after they filed suit and completed surgery.

20.     By representing Claimants and pursuing settlement on behalf of Claimants, the Subin Firm earns a certain percentage of the judgment or settlement as compensation, in addition to other moneys obtained via unnecessary litigation funding which is filtered through other limited liability companies to ultimately return to the Subin Firm and others, to the specific and foreseeable detriment of the claimants themselves.

21.     By referring Claimants to Other Law Firms to pursue workers' compensation benefits on behalf of Claimants, the Subin Firm maintains control over treatment allegedly provided while Other Law Firms earn a certain percentage of the workers' compensation benefit as compensation.

22.     Because the greater the extent and severity of the claimed medical treatment, the greater the workers' compensation benefits and settlement value are: by directing Claimants to

receive unnecessary, excessive, unwarranted and costly healthcare services and thereby fraudulently manufacturing medical treatment, Defendants unlawfully inflate workers' compensation benefits and settlement values from which the Subin Firm, and ultimately, the Defendants, receive financial gain.

23.     Because of the New York Workers' Compensation system in place, payments for these unnecessary, excessive, unwarranted and costly services were readily paid.

**B.     Defendants' Participation in the Fraud Scheme**

24.     At all times relevant to this Complaint, the Subin Firm was an enterprise, as defined by 18 U.S.C. § 1961(4), which was engaged in, and its activities affected, interstate commerce.

25.     Since at least 2018, the Subin Firm has been involved in thousands of lawsuits with attendant workers' compensation proceedings involving purported construction work injuries in furtherance of the Fraud Scheme.

26.     Defendants H. Subin and E. Subin, father and son, are partners at the Subin Firm, which boasts three generations of the Subin family on the cutting edge of personal injury law.

27.     At all relevant times, H. Subin directed, authorized, coordinated, and controlled the conduct engaged in by E. Subin, the Runners and other attorney/employees of the Subin Firm.

28.     H. Subin, as principal and lead trial attorney, controlled the Subin Firm's prosecution of Claimants' claims and lawsuits, assigning duties and responsibilities to employees, Other Law Firms and Medical Providers, and intentionally submitting or causing the submission of claims and documentation to Tradesman, the New York State Worker's Compensation Board ("NY WCB") and/or the various courts within the State of New York.

29.     Upon information and belief, at all relevant times, E. Subin, as partner and senior trial attorney, controlled the Subin Firm's prosecution of Claimants' claims and lawsuits, assigning

COMPLAINT                                                    PAGE 6 OF 23

duties and responsibilities to employees, Other Law Firms and Medical Providers, and intentionally submitting or causing the submission of claims and documentation to Tradesman, the NY WCB and/or the various courts within the State of New York.

30.     Attorneys and/or employees of the Subin Firm, at the direction of H. Subin and E. Subin, knowingly transmitted documents by mail and/or email which contained assertions of legitimate construction accidents, the existence of injuries and the necessity of medical treatment. This unlawful conduct worked to falsely bolster and add value to the Claimants' workers' compensation claims and personal injury lawsuits, thereby inflating settlement value and ultimately, the Subin Firm's financial gain from the lawsuits.

31.     The pattern of racketeering engaged in by Defendants involving a scheme to defraud and steal from Plaintiff and others, began before 2018, and continues to the present day, and includes among others:

a.  On or about December 5, 2019, Defendant Lupi introduced Claimant A to Defendant H. Subin who together with Defendant Lupi referred the patient to Other Law Firms proximate to March 4, 2020 and to various medical providers for purported diagnosis and treatment of medical conditions allegedly caused by a purported injury of that date during the course of Claimant A's alleged employment with a construction company.  Claimant A was subsequently assisted by Lupi and others with the Subin Law Firm to undergo unnecessary diagnostic and treatment protocols for which they were compensated, including but not limited to surgeries allegedly performed on September 21, 2020, for which Defendant Lupi was identified as the attorney, utilizing an email address belonging to another law firm not presently named herein.  Upon information

and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

b.  On or about November 17, 2020, at the direction of E. Subin and/or H. Subin, a Verified Bill of Particulars alleging facts related to the alleged accident, injuries and/or unnecessary diagnostics and treatment for Claimant A was mailed via the United States Postal Service to defense counsel in Claimant A's underlying lawsuit in violation of 18 U.S.C. § 1341 (mail fraud).

c.  On or about November 29, 2021, Defendant Lupi introduced Claimant B to Defendant H. Subin, who together with Defendant Lupi and others known and unknown, induced Claimant B to undergo various diagnostic and treatment protocols for medical conditions allegedly caused by a purported injury on that date in the course of Claimant B's alleged employment with a construction company.  Claimant B subsequently was assisted by Lupi and others with the Subin Firm to undergo unnecessary diagnostic and treatment procedures in consideration of promises of compensation. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part, by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

d.  At some point prior to January 18, 2021, Defendant Lupi introduced Claimant C to Defendant H. Subin, who together with Defendant Lupi and others known and unknown, induced Claimant C to undergo various diagnostic and treatment

protocols for medical conditions allegedly caused by a purported injury on that date in the course of Claimant C's alleged employment with a construction company. Claimant C subsequently was assisted by Lupi and others with the Subin Firm to undergo unnecessary diagnostic and treatment procedures in consideration of promises of compensation, including but not limited to surgery allegedly performed proximate to January 18, 2021, for which Defendant Lupi was specifically identified. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

e.  On or about December 28, 2020, Lucy Hernandez, on Nappa, Monterosso & Poznansky, LLP letterhead, sent an email to the NY WCB enclosing HIPPA for medical records and C-4/C-4.2 forms for Claimant C and requesting all medical records and C-4/C-4.2 forms to be sent to "Lucy Hernandez at lhernandez@subinlaw.com" or to fax to the attention of "Lucy Hernandez to (646) 652-7037," a number associated with the Subin Firm, in violation of 18 U.S.C. § 1343 (wire fraud). The enclosed C-4 Doctor's Progress Report reported the medical examination of Claimant C by a chiropractor at Sunshine State Medical, Inc. on December 14, 2020. The medical examination was unnecessary but was provided to increase workers' compensation claim and personal injury lawsuit settlement value, and Defendants E. Subin and/or H. Subin caused the medical record to be submitted to the NY WCB and the

request for medical records to be made to the NY WCB in furtherance of the Fraud Scheme.

f.   On or about December 28, 2020, Lucy Hernandez, lhernandez@subinlaw.com, at the direction of E. Subin and/or H. Subin, sent an email to the NY WCB submitting a claim on behalf of Claimant C for medical treatment provided by a chiropractor at Sunshine State Medical, Inc. on December 14, 2020, in violation of 18 U.S.C. § 1343 (wire fraud). The medical treatment was unnecessary but was provided to increase workers' compensation claim and personal injury lawsuit settlement value, and Defendants E. Subin and/or H. Subin caused the claim and medical record to be submitted to the NY WCB in furtherance of the Fraud Scheme.

g.   On or about December 17, 2020, Lucy Hernandez, at the direction of E. Subin and/or H. Subin, sent an email to the NY WCB submitting record of medical treatment provided to Claimant C by iRise Spine and Joint on August 24, 2020, in violation of 18 U.S.C. § 1343 (wire fraud). The medical treatment was unnecessary but was provided to increase workers' compensation claim and personal injury lawsuit settlement value, and Defendants E. Subin and/or H. Subin caused the medical record to be submitted to the NY WCB in furtherance of the Fraud Scheme.

h.   On or about September 24, 2021, at the direction of E. Subin and/or H. Subin, a Supplemental Verified Bill of Particulars alleging facts related to the alleged accident, injuries and/or unnecessary diagnostics and treatment for Claimant A

was mailed via the United States Postal Service to defense counsel in Claimant A's underlying lawsuit in violation of 18 U.S.C. § 1341 (mail fraud).

i.    On or about August 4, 2022, Defendant Lupi introduced Claimant D to Defendant H. Subin who together with Defendant Lupi referred the patient to Other Law Firms proximate to March 8, 2022, and to various medical providers for purported diagnosis and treatment of medical conditions allegedly caused by a purported injury of that date during the course of Claimant D's employment with a construction company.  Claimant D subsequently was assisted by Lupi and others with the Subin Law Firm, to undergo unnecessary diagnostic and treatment protocols for which she was compensated, including but not limited to surgeries allegedly later performed proximate to February 28, 2023, in which Defendant Lupi was specifically identified.  Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

j.    On or about January 18, 2023, Erika Salto, paralegal at the Subin Firm, at the direction of E. Subin and/or H. Subin, sent a letter on the Subin Firm letterhead, enclosing an executed Workers' Compensation Form OC-110A for Claimant D and requesting a copy of the entire Workers Compensation file by e-mail to esalto@subinlaw.com, in violation of 18 U.S.C. § 1341 (mail fraud). Defendants E. Subin and/or H. Subin caused the letter to be sent to the NY WCB requesting the workers' compensation file in furtherance of the Fraud Scheme, notwithstanding the Power of Attorney E. Subin and/or H. Subin and persons

acting on their behalf induced Claimant D to sign and date August 8, 2022, which was caused to be sent proximate to March 20, 2023. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

k.   On or about April 15, 2023, and January 5, 2024, at the direction of E. Subin and/or H. Subin, a Verified Bill of Particulars and medical records alleging facts related to the alleged accident, injuries and/or unnecessary diagnostics and treatment for Claimant A was mailed via the United States Postal Service to defense counsel in Claimant A's underlying lawsuit in violation of 18 U.S.C. § 1341 (mail fraud).

l.   At some point prior to November 11, 2022, Defendant Lupi introduced Claimant E to Defendant H. Subin, who together with Defendant Lupi and others known and unknown, induced Claimant E to undergo various diagnostic and treatment protocols for medical conditions allegedly caused by a purported injury on that date in the course of Claimant E's alleged employment with a construction company.  Claimant E subsequently was assisted by Lupi and others with the Subin Firm to undergo unnecessary diagnostic and treatment procedures in consideration of promises of compensation, including but not limited to surgery allegedly performed proximate to September 6, 2023, for which Defendant Lupi was specifically identified. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of

telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

m.  On or about April 19, 2023, at the direction of E. Subin and/or H. Subin, a Verified Bill of Particulars alleging facts related to the alleged accident, injuries and unnecessary diagnostics and treatment for Claimant E was mailed via the United States Postal Service to defense counsel in Claimant E's underlying lawsuit in violation of 18 U.S.C. §§ 1341 (mail fraud).

n.  At some point prior to November 9, 2021, Defendant Lupi introduced Claimant F to Defendant H. Subin, who together with Defendant Lupi and others known and unknown, induced Claimant F to undergo various diagnostic and treatment protocols for medical conditions allegedly caused by a purported injury on December 28, 2020 in the course of Claimant F's alleged employment with a construction company.  Claimant F was assisted at all times by Lupi and by others with the Subin Firm to undergo unnecessary diagnostic and treatment procedures in consideration of promises of compensation, including but not limited to surgery allegedly performed proximate to December 9, 2021, for which Defendant Lupi was specifically identified, which was caused to be additionally transmitted via facsimile and electronic mail on September 23, 2021. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

o.  On or about April 14, 2022, Emily Khywah, paralegal at the Subin Firm, at the direction of E. Subin and/or H. Subin, sent a letter on the Subin Firm letterhead, enclosing an executed Workers' Compensation Form OC-110A for Claimant  F and requesting a copy of the entire Workers Compensation file by e-mail to ekhywah@subinlaw.com, in violation of 18 U.S.C. § 1341 (mail fraud). Defendants E. Subin and/or H. Subin caused the letter to be sent to the NY WCB requesting the workers' compensation file in furtherance of the Fraud Scheme, notwithstanding the Power of Attorney E. Subin and/or H. Subin and persons acting on their behalf induced Claimant F to sign and date November 9, 2021, which was caused to be sent proximate to that date. Upon information and belief, the acts and conduct of the Defendants were effectuated, in part by means of telephone calls, texts, emails and use of the mails, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and NY Penal Code § 215 (bribery).

p.  On or about April 25, 2022, at the direction of E. Subin and/or H. Subin, a Verified Bill of Particulars alleging facts related to the alleged accident, injuries and/or unnecessary diagnostics and treatment for Claimant F was mailed via the United States Postal Service to defense counsel in Claimant F's underlying lawsuit in violation of 18 U.S.C. § 1341 (mail fraud).

32.   During the course of the representative underlying litigation and workers' compensation claims mentioned herein, the Defendants continuously pressured and coerced Claimants to engage in claims and medical treatment they otherwise would not have and fabricated and transmitted documentation like those mentioned hereinabove containing false information and

---

representations about injuries and medical treatment, which constitutes a combination of mail and wire fraud pursuant to 18 U.S.C. §§ 1341 and 1343 and bribery pursuant to NY Penal Code § 215.

33.     The Defendants' actions are a part of their ordinary course of business.  Further, the claims mentioned herein, and numerous others, are active and ongoing.  Thus, the Defendants' actions outlined constitute a pattern of racketeering activity, are representative of Defendants' pattern and course of practice, and are capable of repetition into the future unless stopped.

## IV.   PLAINTIFFS' JUSTIFIABLE RELIANCE

34.     Tradesman is under a statutory obligation to promptly and fairly pay or object to bills received within 45 days. *See* New York Workers' Compensation § 13-5(1).

35.     The invoices and documentation supporting the Fraud Scheme submitted to Tradesman, the New York State Workers' Compensation Board, the New York Unified Court System, and others, contained materially false statements and were designed to conceal materially false statements.

36.     As such, Tradesman justifiably and reasonably relied on them as facially valid and was fraudulently induced to direct payment on dozens of claims.

## V.   DAMAGES

37.     Defendants' patterns of fraudulent conduct caused injury to Plaintiffs in their business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Plaintiffs to calculate damages with specificity at this stage in the litigation (whereas Plaintiff's damages continue to accrue), Plaintiffs' injuries include, but are not limited to the following:

> a.     Plaintiff Roosevelt – Actual and consequential damages for the payments such Plaintiff made as reimbursement for payments made directly to the

Subin Firm or to others due to Defendants' pattern of fraudulent conduct in connection with claims made under New York's Workers' Compensation Laws and New York's Labor Laws, the exact amount to be determined at trial.

b.      Plaintiff Tradesman – Actual and consequential damages for the expenses incurred for the administration of these claims and the retention of additional staff to perform investigative and support services for claims wherein the Defendants are submitting or causing to be submitted claims/demands for monetary payments in connection with New York's Worke's' Compensation Law and New York's Labor Laws, the exact amount to be determined at trial.

## VI.    CAUSES OF ACTION

### COUNT I
### RICO Violation (§ 1962(c))

38.      Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

39.      Each of the Defendants conducted or participated in the conduct of the affairs of the Subin Firm by engaging in transactions and conduct constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

40.      The pattern of racketeering activity in which Defendants engaged involved numerous specific transactions as described in detail in this Complaint and the accompanying exhibits, constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and bribing a

witness under New York law (NY Penal Code § 215) – all of which is "racketeering activity" as defined in 18 U.S.C. § 1961(1)(A).

41.     The predicate acts of mail fraud, wire fraud, and bribing a witness or victim involved the transmission and use of false documentation in furtherance of Defendants' scheme to defraud Plaintiffs in connection with submitting, filing, prosecuting and asserting workers' compensation claims and lawsuits arising out of fraudulent construction accidents.

42.     As a result of the pattern of racketeering activity, Plaintiffs have suffered damage to their business and property.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(a)     An award of Plaintiffs' actual and consequential damages to be established at trial, and trebling of such damages pursuant to 18 U.S.C. § 1964;

(b)     Plaintiffs' reasonable attorneys' fees, expenses, costs, and interest;

(c)     Injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in this Complaint; and

(d)     Such other relief as the Court deems just and proper.

## COUNT II
## RICO Violation (§ 1962(d))

43.     Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

44.     From at least 2018 to the present, Defendants did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly and indirectly, in the

conduct of the affairs of the Subin Firm through pattern of racketeering activity set forth herein in violation of 18 U.S.C. § 1962(d).

45.     The pattern of racketeering activity in which the Defendants intentionally combined to engage in or otherwise conspired to engage in involved numerous specific acts and conducts as described in detail herein and the accompanying exhibits constituting mail fraud (18 U.S.C. §§ 1341 and 1952), wire fraud (18 U.S.C. § 1343) and bribing a witness under New York law (NY Penal Code § 215), all of which is "racketeering activity" as defined in 18 U.S.C. § 1861(1)(A).

46.     The predicate acts of mail fraud, wire fraud, and bribing a witness or victim also involved the transmission and use of false and misleading documentation in furtherance of Defendants' scheme to defraud Plaintiffs in connection with submitting, filing, prosecuting and asserting workers' compensation claims and lawsuits arising out of fraudulent construction accidents.

47.     As a result of the pattern of racketeering activity, Plaintiffs have suffered damage to their business and property.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(a)     An award of Plaintiffs' actual and consequential damages to be established at trial, and trebling of such damages pursuant to 18 U.S.C. § 1964;

(b)     Plaintiffs' reasonable attorneys' fees, expenses, costs, and interest;

(c)     Injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in this Complaint; and

(d)     Such other relief as the Court deems just and proper.

## <u>COUNT III</u>
## <u>Common Law Fraud</u>

48.     Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

49.     Defendants made misrepresentations of facts, deliberately concealed, omitted materials facts that they had a duty to disclose in connection with their claims for reimbursement and/or payment under New York law.

50.     These misrepresentations of fact by Defendants included, but were not limited to, the material misrepresentations of fact made in asserting the legitimacy of accidents, the existence of injuries and the necessity of treatment.

51.     Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

52.     Defendants made these misrepresentations in furtherance of the scheme to defraud Plaintiffs by submitting claims for payment of workers' compensation and general liability insurance benefits.

53.     Defendants' misrepresentations were known to be false from the onset and were made for the purpose of inducing Plaintiffs to make payments for claims that were not legitimate.

54.     Plaintiffs reasonably and justifiably relied, to their detriment, on the truthfulness of Defendants' representations concerning their eligibility to receive payments of workers' compensation and general liability insurance benefits, and without knowledge of Defendants' scheme and artifice to defraud them.

55.     Defendants knew, or should have known, that Plaintiffs would so rely on and intended that they so rely on their truthfulness.

56.     But for the Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct, Plaintiffs would not have paid workers' compensation and general liability insurance benefits.

57.     Plaintiffs at no time knew or had reason to know in the exercise of due diligence or reasonable care that Defendants were engaged in misrepresentations, omissions, and fraudulent conduct.

58.     As a direct and proximate cause of Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct by Defendants, Plaintiffs have been damaged. Plaintiffs' damages include, but are not necessarily limited to, benefit payments, administration costs, investigative and defense costs paid by Plaintiffs to Defendants or caused by Defendants.

59.     Because Defendants' conduct was knowing, intentional, willful, wanton, and reckless, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(a)     An award of Plaintiffs' actual and consequential damages to be established at trial;

(b)     Plaintiffs' costs, including, but not limited to, investigative costs incurred in the detection of Defendant's illegal conduct; and

(c)     Such other relief as the Court deems just and proper.

## COUNT IV
## Unjust Enrichment

60.     Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

61.     As described above, Defendants conspired to induce Plaintiffs to make or expend numerous and substantial payments to them or others.

62.     The Defendants were never eligible to make claims or seek reimbursement under New York law because, at all relevant times, the accidents, injuries and treatment were fraudulent.

63.     When Plaintiffs paid Defendants and others, Plaintiffs reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made concerning Defendants' eligibility to make claims or seek reimbursement under New York law.

64.     Each and every payment that Plaintiffs made or were caused to make to Defendants and others during the course of the Fraud Scheme constitutes a benefit that the Defendants sought and voluntarily accepted.

65.     Throughout the course of their scheme, Defendants wrongfully obtained from Plaintiffs benefit payments as a direct and proximate result of the unlawful conduct detailed above.

66.     Retention of those benefits by Defendants would violate fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(d)     An award of Plaintiffs' actual and consequential damages to be established at trial; and

(e)     Such other relief as the Court deems just and proper.

<u>COUNT V</u>
<u>Declaratory Relief Pursuant to 28 U.S.C. § 2201</u>

67.     Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

68.     Pursuant to 18 U.S.C. § 2201(a), the Court may determine the rights and legal obligations of the parties.

69.     There is an actual case and controversy between Plaintiffs on the one hand, and Defendants on the other hand, as to all charges for examinations, treatments, testing, injections, and surgeries that have not been paid to date and through the pendency of this litigation. Plaintiffs contend these Defendants are not entitled to reimbursement for any of these charges.

70.     Because these Defendants have made false and fraudulent statements and otherwise engaged in the fraudulent conduct described above with the intent to conceal, mislead and misrepresent material facts and circumstances regarding each claim submitted, these Defendants are not entitled to any reimbursement for alleged services relating to any of the claims at issue.

WHEREFORE, Plaintiffs demand judgment against Defendants for:

(a)     A declaration that Defendants, at all times relevant, have submitted claims and bills to Plaintiffs for staged accidents and unnecessary healthcare services in violation of New York law;

(b)     Declare that Defendants' activities are unlawful;

(c)     Declare that Plaintiffs have no obligation to pay any pending, previously-denied, and/or future workers' compensation or general liability insurance claims submitted by the Defendants; and

(d)     Such other relief as the Court deems just and proper.

---

**COMPLAINT**                                                                        PAGE 22 OF 23

## VII.    JURY TRIAL DEMAND

71.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims.


Dated: July 19, 2024

                               Respectfully submitted,

                               **THE WILLIS LAW GROUP, PLLC**


                    By: */s/ William J. Clay*
                        **WILLIAM J. CLAY (pro hac pending)**
                        **MICHAEL A. GRAVES**
                        **AARON E. MEYER**
                        1985 Forest Lane
                        Garland, Texas 75042
                        Telephone:  214-736-9433
                        Facsimile:   214-736-9994
                        Service Email: service@thewillislawgroup.com

                        *ATTORNEYS FOR THE PLAINTIFFS*
                        ROOSEVELT ROAD RE, LTD. AND
                        TRADESMAN PROGRAM MANAGERS, LLC